UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK COLSTON,

      Plaintiff,

v.                                                       Case No. 2:09-cv-273
                                                       HON. ROBERT HOLMES BELL

JEFF WILCOX,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Mark Colson, an inmate currently confined at the Cooper Street Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendant Inspector Jeff Wilcox who is employed at the Hiawatha Correctional Facility. Plaintiff alleges that he was punished for exercising his right to present grievances. Plaintiff asserts violations of the First Amendment, the Eighth Amendment, and the Fourteenth Amendment under the Due Process Clause and the Equal Protection Clause.

Plaintiff alleges that between October 2008 and March 2009, he was sexually assaulted and sexually harassed by former Corrections Officer Trisha McLeod. McLeod provided plaintiff with her home address and telephone number. Plaintiff alleges that McLeod instructed plaintiff to write her romantic and sexual letters. McLeod told plaintiff that she pulled his file and learned his family's addresses and telephone numbers. McLeod also threatened that she would write misconducts on plaintiff if he ever told anyone about her conduct. Plaintiff alleges that McLeod told him that defendant Wilcox investigated McLeod for having an over familiar relationship with a prisoner. She told plaintiff that Wilcox cleared her of all charges after she paid him off. She told

plaintiff that Wilcox was racially prejudiced and often referred to African American prisoners as niggers.

Plaintiff was talking with another prisoner on March 13, 2009, when McLeod approached him and asked to speak with him alone. McLeod asked plaintiff if he had a letter for her. Plaintiff gave her a letter. McLeod then stated that she was glad that plaintiff was following her instructions. She then read the letter and informed plaintiff that she was angry with the content of the letter. She threatened that if plaintiff stopped their romantic and sexual relationship, she would give Wilcox a copy of an earlier letter plaintiff had written to McLeod. She warned plaintiff not to disclose their relationship with anyone else or she would pay off defendant Wilcox and make sure that plaintiff was punished. She then instructed plaintiff to write her a letter on March 16, 2009.

Plaintiff did write a letter to McLeod on March 16, 2009. That letter informed McLeod that plaintiff was transferring the next day to a different facility and when he arrived he planned to tell officials about McLeod's conduct. On that date, McLeod went to defendant Wilcox and informed him of her improper relationship with plaintiff. She admitted to hugging plaintiff and that plaintiff had kissed her on the head. Defendant Wilcox started an investigation and prepared a formal complaint against McLeod to prevent her from entering the facility during the investigation. He also referred the matter to the Michigan State Police.

On March 17, 2009, defendant Wilcox and a detective spoke with plaintiff about the information obtained from McLeod. Plaintiff told the detective that he did not mean any threatening statement contained in the letters that he wrote to McLeod. The detective told plaintiff that he would not recommend that criminal charges be filed against plaintiff. Plaintiff states that defendant Wilcox informed him that plaintiff could not be punished by correctional officials because plaintiff was the victim. He further informed plaintiff that McLeod had violated policy and would be subject to

criminal charges for her conduct. McLeod resigned from the MDOC on March 17, 2009, in anticipation of termination from her employment. On March 18, 2009, defendant Wilcox wrote misconduct tickets on plaintiff for threatening behavior and sexual misconduct. Plaintiff believes that it was improper for him to receive the misconduct tickets because he was clearly the victim. Further, plaintiff believes that he should be treated no differently than female prisoners who are victims of sexual assault. Plaintiff states that defendant Wilcox told plaintiff that he wanted to teach him a lesson about being romantically involved with white woman and that defendant Wilcox personally disliked African American men who became romantically involved with white women. Further, plaintiff alleges that defendant Wilcox stated that he was instructed to write the misconduct tickets by MDOC Director Patricia Caruso and Warden Jeff Woods. Plaintiff was found guilty of both misconduct violations. The hearing officer explained:

> EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT:
>
> The prisoner is present and the misconduct report is reviewed with him along with his refusal to make a statement. Note from H/I, the letters which are found to be confidential for the security of the facility and the safety of the officer, his questions and Inspector's Memo. Prisoner Colston states that he did type the letters and he did engage in acts with her because she forced him to from October of last year until March of this year when he said that he wanted to end it he was getting a parole. He said that he did not report the forced sexual acts earlier because she threatened to say he lied and was stalking her. Prisoner has nothing further to add. No further evidence is requested or is needed. Prisoner is informed of the findings, sanctions and sanction dates and told that he will receive the report later today.
>
> REASONS FOR FINDINGS:
>
> THREATENING BEHAVIOR: Prisoner Colston wrote two letters to Officer McLeod saying in part that if she did not do what he wanted to do then he would report that she was smuggling drugs into the facility and repeatedly said that he knew where she lived as did

his family and that she could not hide even if she quit on 3-16-09 at 1630 hrs. I find that these statements by their very nature express an intent to physically harm the officer. Prisoner Colston's statement is not believed because it makes no sense that he would willingly write and keep letters that are threatening the officer upon her instruction and against his will because she threatened to say he was stalking her if he told the facility or anyone else what they were doing and did not write the letters. If she truly had been forcing herself on him for 5 months and was making him write threatening letters then he would have told before he even wrote the letters because as long as he was not stalking her and did not write any letters to her then there would be no proof of stalking so he would have nothing to worry about and he would not be at the same facility as her. The Inspector is clear and logical in his statement and is found to be credible. The charge is upheld.

SEXUAL MISCONDUCT: Prisoner Colston hugged and kissed Officer McLeod before 3-16-09. I find that this was clearly touching of the other that was done for the purpose of sexual gratification. Prisoner Colston's statement is not believed for the reasons stated above. The Inspector is clear and logical in his statement and is found to be credible. The charge is upheld.

On March 26, 2009, plaintiff's parole was rescinded and he was scheduled to see the parole board. On March 27, 2009, plaintiff was reclassified and transferred to a level III facility. Plaintiff lost 180 days of credit from his maximum sentence.

Plaintiff states that he was originally scheduled to be released no later than February 2011. Plaintiff's current maximum release date is August 8, 2011. Plaintiff's parole was denied on June 6, 2009. Plaintiff is currently housed at the Cooper Street Correctional Facility in Jackson, Michigan. The Cooper Street Correctional Facility is a level I facility housing prisoners getting ready to transition to parole or release from confinement.

Defendant moves for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that defendant Wilcox retaliated against him by issuing misconduct tickets for threatening behavior and sexual misconduct. Plaintiff was found guilty of the misconducts after a hearing. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant argues that plaintiff never engaged in protected conduct. Plaintiff asserts that he engaged in protected conduct when he threatened to expose McLeod's conduct to prison officials. However, plaintiff informed McLeod that he would expose her conduct to prison officials including a threat that McLeod smuggled drugs into the prison. Plaintiff was issued a misconduct ticket for threatening McLeod. In the opinion of the undersigned, plaintiff cannot assert that the basis of his misconduct was his protected conduct. Plaintiff argues that defendant Wilcox was protecting McLeod. However, it was defendant Wilcox's investigation that ultimately lead to McLeod's resignation. There exists no evidence that could establish that defendant Wilcox was protecting McLeod.

Plaintiff claims that defendant Wilcox subjected him to cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Defendant Wilcox issued two misconduct violations to plaintiff. In the opinion of the undersigned, plaintiff cannot show that the receipt of a misconduct ticket violated the Eighth Amendment.

Plaintiff asserts that his procedural due process rights were violated. Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.* In the opinion of the undersigned, plaintiff has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusion that plaintiff was guilty of the misconduct charge was supported by the record. It is clear that plaintiff received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearing. Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written

notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). Plaintiff has failed to show that his constitutional rights were denied.

Plaintiff asserts that his equal protection rights were violated because he was treated differently than a female prisoner. To establish a violation of the Equal Protection Clause, an inmate must show that the defendant purposefully discriminated against him. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendant. *Id.* at 265-66. Plaintiff is an African American prisoner which could establish his membership in a suspect class. However, to establish a violation of the Equal Protection Clause, there must be proof that a discriminatory intent or purpose was a factor in an action taken by the prison officials. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). Plaintiffs must allege that a state actor intentionally discriminated against them because of his membership in a protected class. *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990); *see Knop v. Johnson*, 977 F.2d 996, 1013-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993) (protection violated by a pattern of harassment that shows a selective discriminatory purpose). Plaintiff alleges that defendant Wilcox issued the misconduct tickets to him simply because he did not like African American males to have romantic relationships with white females. However, it is undisputed that plaintiff threatened McLeod with a claim that she brought drugs into the prison and

that he engaged in a sexual relationship with McLeod. Accordingly, in the opinion of the undersigned, plaintiff cannot support his claim of an equal protection violation.

Alternatively, defendant moves for summary judgment on the grounds of qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendant is entitled to qualified immunity.

Accordingly, it is recommended that defendant's Motion For Summary Judgment (Docket #25) be granted and this case be dismissed in its entirety. It is further recommended that plaintiff's motion to compel (Docket #19) and motion to appoint counsel (Docket #43) be denied.[1]

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting defendant's motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: February 17, 2011

---

[1] Plaintiff filed a motion to compel a non-party to answer interrogatory requests.